# ALABAMA SJIS CASE DETAIL

PREPARED FOR: THOMAS KENDRICK

alacourt.com

County: **46**     Case Number: **CV-2022-900020.00**     Court Action:

Style: **J. P., AS FATHER AND NEXT FRIEND OF G. P., A MINOR V. SEQUEL TSI OF AL**

Real Time

DEFENDANT'S
EXHIBIT

*1*

PENGAD 800-631-6989

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 3/18/2022 | 11:35 AM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 3/18/2022 | 11:35 AM | FILE | FILED THIS DATE: 03/18/2022          (AV01) | AJA |
| 3/18/2022 | 11:35 AM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 3/18/2022 | 11:35 AM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 3/18/2022 | 11:35 AM | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 3/18/2022 | 11:35 AM | ASSJ | ASSIGNED TO JUDGE: WILLIAM I. WHORTON          (AV01) | AJA |
| 3/18/2022 | 11:35 AM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 3/18/2022 | 11:35 AM | C001 | C001 PARTY ADDED: G. P., A MINOR J. P., AS FATHER | AJA |
| 3/18/2022 | 11:35 AM | C001 | LISTED AS ATTORNEY FOR C001: JAMES THOMAS EARL | AJA |
| 3/18/2022 | 11:35 AM | C001 | LISTED AS ATTORNEY FOR C001: KNOWLES JEREMY LYNN | AJA |
| 3/18/2022 | 11:35 AM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 3/18/2022 | 11:35 AM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 3/18/2022 | 11:35 AM | C001 | LISTED AS ATTORNEY FOR C001: MCGOWAN WALTER EDGAR | AJA |
| 3/18/2022 | 11:35 AM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 3/18/2022 | 11:35 AM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 3/18/2022 | 11:35 AM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 3/18/2022 | 11:35 AM | D001 | D001 PARTY ADDED: SEQUEL TSI OF AL, LLC D/B/A SEQU | AJA |
| 3/18/2022 | 11:35 AM | D001 | CERTIFIED MAI ISSUED: 03/18/2022 TO D001  (AV02) | AJA |
| 3/18/2022 | 11:35 AM | D002 | D002 PARTY ADDED: SEQUEL YOUTH & FAMILY SERVICES, | AJA |
| 3/18/2022 | 11:36 AM | D002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE          (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D002 | D002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D002 | CERTIFIED MAI ISSUED: 03/18/2022 TO D002  (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D003 | D003 PARTY ADDED: SEQUEL TSI HOLDINGS, LLC  (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D003 | LISTED AS ATTORNEY FOR D003: PRO SE          (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D003 | CERTIFIED MAI ISSUED: 03/18/2022 TO D003  (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D003 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 3/18/2022 | 11:36 AM | D003 | D003 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 3/18/2022 | 11:36 AM | ECOMP | COMPLAINT E-FILED. | KNO016 |
| 3/18/2022 | 3:43 PM | ESCAN | SCAN - FILED 3/18/2022 - CERTIFIED MAIL | ANS |
| 3/18/2022 | 3:57 PM | ESCAN | SCAN - FILED 3/18/2022 - CERTIFIED MAIL | ANS |
| 3/29/2022 | 9:57 AM | ESERC | SERVICE RETURN | ANS |
| 3/29/2022 | 9:57 AM | D001 | SERVICE OF CERTIFIED MAI ON 03/21/2022 FOR D001 | ANS |
| 3/29/2022 | 9:58 AM | ESERC | SERVICE RETURN | ANS |
| 3/29/2022 | 9:58 AM | D003 | SERVICE OF CERTIFIED MAI ON 03/21/2022 FOR D003 | ANS |
| 3/29/2022 | 11:16 AM | ASSJ | ASSIGNED TO JUDGE: STEVEN R PERRYMAN          (AV01) | AJA |
| 3/29/2022 | 11:16 AM | ASSJ | TEMPORARY CHANGE          (AV01) | AJA |
| 4/1/2022 | 9:44 AM | ESERC | SERVICE RETURN | ANS |
| 4/1/2022 | 9:44 AM | D002 | SERVICE OF CERTIFIED MAI ON 03/25/2022 FOR D002 | ANS |

**END OF THE REPORT**

DOCUMENT 2

ELECTRONICALLY FILED
3/18/2022 11:36 AM
46-CV-2022-900020.00
CIRCUIT COURT OF
MACON COUNTY, ALABAMA
DAVID LOVE, JR., CLERK

## IN THE CIRCUIT COURT OF MACON COUNTY,

|  |  |  |
|---|---|---|
| J. P., as Father and Next Friend<br>of G. P., a minor, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No: CV2022-_____ |
| | ) | |
| SEQUEL TSI of ALABAMA, LLC, d/b/a | ) | |
| SEQUEL TSI of TUSKEGEE; | ) | |
| SEQUEL YOUTH & FAMILY | ) | |
| SERVICES, LLC; | ) | |
| SEQUEL TSI HOLDINGS, LLC; | ) | |
| FICTITIOUS DEFENDANT "A," | ) | |
| the person or persons who were in charge of | ) | |
| monitoring G. P. and other residents | ) | |
| during the times G. P. was assaulted | ) | |
| by other residents and/or staff; | ) | |
| FICTITIOUS DEFENDANT "B," | ) | |
| the person or persons who failed to intervene | ) | |
| during the times when G. P. was assaulted | ) | |
| by other residents and/or staff; | ) | |
| FICTITIOUS DEFENDANT "C," | ) | |
| the person or persons who assaulted, abused | ) | |
| and/or neglected G. P. while he resided | ) | |
| at Sequel Tuskegee; | ) | |
| FICTITIOUS DEFENDANT "D," | ) | |
| the person or persons who failed to provide | ) | |
| G. P. with adequate medical and | ) | |
| mental health treatment while he resided | ) | |
| at Sequel Tuskegee; | ) | |
| FICTITIOUS DEFENDANT "E," | ) | |
| the person or persons who negligently or | ) | |
| wantonly failed to properly or adequately | ) | |
| hire, train, supervise and/or retain the | ) | |
| other Fictitious Defendants; and | ) | |
| FICTITIOUS DEFENDANT "F," | ) | |
| the person or persons whose negligence or | ) | |
| wantonness proximately caused the injuries | ) | |
| and damages suffered by G. P. as set | ) | |
| out in this Complaint; the identities of the | ) | |
| Fictitious Defendants are unknown to the | ) | |
| Plaintiff at this time, but will be added by | ) | |
| amendment when ascertained; | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## INTRODUCTION

This case arises from the tragic and horrific abuse and neglect inflicted by Sequel Tuskegee staff and residents on a child. Sequel owns and operates facilities for juveniles at various locations throughout the United States. Sequel's facilities are populated by children sent there by various state governments, including the State of Alabama. Sequel claims its facilities provide comprehensive services for children where they are supposed to be healed and safe. In reality, Sequel's facilities are houses of horrors where its staff members abuse and prey upon children. A culture of violence and abuse pervades throughout Sequel facilities, including the Tuskegee facility. The systemic failures at Sequel facilities are disturbing. Sequel engages in a pattern and practice of using violent force against children. Children at Sequel facilities are subjected to unapproved and painful restraint techniques, long term seclusion/isolation and physical abuse. Staff refuses to intervene during fights and often encourages these fights. There is poor supervision, staff bullying and intimidation of the children. Many of the children "served" by Sequel are victims with traumatic histories. These children are re-traumatized daily by continuous abuse and neglect. This case involves a youth residential facility, owned by the Sequel Defendants, and funded by the State of Alabama, where the physical abuse and neglect of its child residents was blatant, rampant and condoned.

## PARTIES

1.    Plaintiff J. P. is over the age of nineteen (19) years and is a resident of the State of Alabama. He brings this civil action pursuant to § 6-5-390 *Code of Alabama*. He is the Father and Next Friend of G. P., a minor, under the age of nineteen (19) years.

2

2.      Defendant Sequel TSI of Alabama, LLC d/b/a Sequel TSI of Tuskegee (hereinafter "Sequel Tuskegee"), is a Psychiatric Residential Treatment Facility located in Tuskegee, Alabama. Sequel TSI of Alabama, LLC is a Domestic corporation incorporated in the State of Alabama with its principal place of business located in Huntsville, Alabama.

3.      Sequel Youth & Family Services, LLC is a privately owned for-profit Domestic corporation incorporated in the State of Delaware whose headquarters is in Huntsville, Alabama. Sequel Youth & Family Services, LLC is the sole Member, and Managing Member, of Sequel TSI Holdings, LLC. Sequel Youth & Family Services, LLC operates youth facilities across the country and owns and/or operates and/or conducts business in Macon County, Alabama. Nationwide, Sequel "services" approximately 10,000 children, including 2,000 who live in facilities fulltime. In 2017, the company reported more than $200 million in revenue. Children in Sequel facilities are supposed to receive intensive mental health treatment.

4.      Sequel TSI Holdings, LLC is a Domestic corporation incorporated in the State of Iowa with its principal place of business in Huntsville, Alabama. Sequel TSI Holdings, LLC is the Managing Member of Sequel TSI of Alabama, LLC.

5.      Fictitious Defendant "A" is the person or persons who were in charge of monitoring G. P. and other residents during the times G. P. was assaulted by other residents and/or staff.

6.      Fictitious Defendant "B" is person or persons who failed to intervene during the times when G. P. was assaulted by other residents and/or staff.

7.      Fictitious Defendant "C" is person or persons who assaulted, abused and/or neglected G. P. while he resided at Sequel Tuskegee.

8.      Fictitious Defendant "D" is the person or persons who failed to provide G. P. with adequate medical and mental health treatment while he resided at Sequel Tuskegee.

9.      Fictitious Defendant "E" is the person or persons who negligently or wantonly failed to

3

properly or adequately hire, train, supervise and/or retain Defendants and the other Fictitious Defendants.

10.     Fictitious Defendant "F" is the person or persons whose negligence or wantonness proximately caused the injuries and damages suffered by G. P., as set out in this Complaint.

## STATEMENT OF FACTS

11.     On November 2, 2021, the Alabama Department of Youth Services (hereinafter "DYS") placed G. P. into Sequel TSI of Tuskegee ("Sequel Tuskegee") in Tuskegee, Alabama. G. P. was 15 years old at the time. He resided at Sequel Tuskegee for approximately seven weeks.

12.     Sequel Tuskegee is a Psychiatric Residential Treatment Facility ("PRTF"). PRTFs are facilities where at risk youth with mental health issues are supposed to receive intensive psychiatric care. G. P. did not receive the necessary mental health treatment he needed but was instead physically and sexually abused and emotionally traumatized at Sequel Tuskegee.

13.     Sequel Tuskegee is a "medium risk secure facility" that has 66 beds. Fifty of the beds are licensed by DYS and 16 are licensed by the Alabama Department of Human Resources (hereinafter "DHR"). Sequel claims students at Sequel Tuskegee learn "in a safe environment." This could not be further from the truth.

14.     DYS and DHR certify, license, and contract with Sequel Tuskegee to place children there to receive therapeutic care to address their mental health needs. The State of Alabama pays Sequel Youth & Family Services, LLC and its affiliates ("Sequel") approximately $330.00 per day to house each child. Upon information and belief, the State has paid Sequel well over $30 million since 2018 to essentially warehouse troubled children in facilities rife with problems. DHR and DYS continue to place children in Sequel facilities.

15.     G. P. was attacked and sexually assaulted within four days of entering the Sequel facility. After reporting the first incident, the residents were allowed to retaliate against G. P. by attacking,

4

beating and threatening him on a daily basis until he was so scared and depressed, he saw no other way out and attempted to take his own life. G. P. did not feel safe at Sequel Tuskegee.

16.     G. P.'s seven weeks in Sequel Tuskegee were a house of horrors. He and the other children at Sequel Tuskegee were treated like animals by staff. G. P. and the other children were physically, verbally and emotionally abused. Despite being a place for the most vulnerable and troubled children, a place where they should be receiving medically required treatment, Sequel Tuskegee is a scary and dangerous place. It resembles a prison and has a culture of violence. Riots are frequent and the facility is infested with rats. Staff smuggled in contraband such as marijuana, cigarettes, alcohol and knives.

17.     Staff-on-child and resident-on-child violence are commonplace at Sequel Tuskegee. G. P. suffered both. There is little supervision, so the violence is rampant. Even worse, when staff is present, they fail to intervene during these assaults. Extreme, illegal and dangerous "restraints" of children by staff are commonplace at Sequel Tuskegee, including chokeholds, and staff lying on top of children who are face down on the ground. Staff is not trained on proper restraint techniques but instead resort to violence. Staff threatens, taunts, and calls children horrible names. During G. P.'s time at Sequel Tuskegee, he was choked, beaten, bitten, punched, slapped and sexually assaulted by residents while the staff did nothing to help him or the other abused residents. G. P. suffered multiple injuries while at Sequel Tuskegee. The beatings, assaults (both physical and sexual), verbal abuse and other horrendous treatment G. P. received, and the physical and mental injuries he received, are too numerous to set out here. G. P. and the other children did not receive adequate medical, vision or dental treatment. Additionally, G. P. and the other children did not receive the promised and medically necessary mental health treatment at Sequel Tuskegee.

18.     During his time at Sequel Tuskegee, G. P. suffered significant and continuous physical, sexual, verbal and/or emotional abuse and/or neglect as separate acts on separate occasions.

19.     Defendants employed aggressive and abusive policies at Sequel Tuskegee that ignored the health and safety of the children residing there, including G. P. Staff refused to intervene and aid those residents in need of physical help.

20.     G. P. was physically and sexually assaulted, neglected and/or abused by Sequel Tuskegee staff at separate times, at separate locations, and under separate circumstances.

21.     Numerous staff at Sequel Tuskegee was informed of and/or had knowledge that G. P. was being physically, sexually, verbally and emotionally abused and neglected on separate occasions at separate locations by separate individuals, but chose to do absolutely nothing to prevent the abuse or neglect nor report it pursuant to their legal obligations.

22.     Defendants failed to adequately and/or sufficiently staff the facility to manage the safety and well-being of the children living at Sequel Tuskegee.

23.     Defendants individually and/or by and through their employees and/or agents, took affirmative steps to maintain the abusive and neglectful culture at Sequel Tuskegee by refusing to report the separate, frequent abuse and neglect that was occurring to children there.

24.     Defendants' combined conduct, through financial support, program design, lack of supervision, and silence and secrecy, endangered the health, safety and welfare of children residing at Sequel Tuskegee, including G. P.

25.     Defendants did not take reasonable steps to prevent or prohibit child abuse, mistreatment or neglect at Sequel Tuskegee.

26.     Despite being entrusted to care for G. P., Defendants illegally failed to inform parents or authorities of child abuse incidents.

## COUNT ONE

27.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

28.     As stated throughout this Complaint, **ALL Defendants** engaged in reckless, extreme and

6

outrageous conduct.

29.     The Defendants' misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

30.     The Defendants knew their reckless, extreme and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury on others and Plaintiff did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

31.     As a proximate result of this reckless, extreme and outrageous conduct, G. P. was horrifically abused and neglected as stated in this Complaint.

        **WHEREFORE,** Plaintiff demands judgment against Defendants and Fictitious Defendants in a fair and reasonable amount of compensatory and punitive damages plus costs.

## COUNT TWO

32.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

33.     Defendants and Fictitious Defendants knew the children residing at Sequel Tuskegee were not protected from abuse and neglect by employees and other residents.

34.     Defendants and Fictitious Defendants knew that G. P. and other children were needlessly subjected to the risk of injury, physical, sexual and verbal abuse.

35.     Defendants and Fictitious Defendants were in charge of monitoring and supervising G. P.

36.     Defendants and Fictitious Defendants negligently or wantonly failed to properly or adequately monitor or supervise G. P. and other residents.

37.     As a proximate result of this negligent or wanton conduct, G. P. was assaulted, abused and neglected on numerous occasions.

7

DOCUMENT 2

**WHEREFORE,** Plaintiff demands judgment against Defendants in a fair and reasonable amount of compensatory and punitive damages plus costs.

## COUNT THREE

38.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

39.    Defendants and Fictitious Defendants were under a duty to protect G. P. from harm, including physical and verbal abuse, neglect, mistreatment and exploitation.

40.    Defendants and Fictitious Defendants negligently or wantonly caused and/or allowed G. P. to be assaulted, abused and neglected.

41.    As a proximate result of this negligent or wanton conduct, G. P. was assaulted, abused and neglected on numerous occasions.

**WHEREFORE,** Plaintiff demands judgment against Defendants and Fictitious Defendants in a fair and reasonable amount of compensatory and punitive damages plus costs.

## COUNT FOUR

42.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

43.    Defendants and Fictitious Defendants had a duty to provide G. P. a safe and humane living environment.

44.    Defendants and Fictitious Defendants negligently or wantonly failed to provide a safe and humane environment for G. P.

45.    As a proximate result of this negligent or wanton conduct, G. P. resided in an inhumane environment where he was assaulted, abused and neglected on numerous occasions.

**WHEREFORE,** Plaintiff demands judgment against Defendants and Fictitious Defendants in a fair and reasonable amount of compensatory and punitive damages plus costs.

## COUNT FIVE

46.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

47.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

48.     The negligence, wantonness and/or other wrongful acts of the named Defendants and
Fictitious Defendants in this cause combined and concurred to cause the injuries and damages as
alleged above.

        **WHEREFORE,** Plaintiff demands judgment against Defendants and Fictitious
Defendants in a fair and reasonable amount of compensatory and punitive damages plus costs.

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON
## ALL CAUSES IN THE ABOVE COMPLAINT

                                        /s/ Thomas E. James
                                        Thomas E. James (JAM023)
                                        Attorney for Plaintiff

**OF COUNSEL**:
**TOMMY JAMES LAW**
4220 Cahaba Heights Court – Suite 210
Birmingham, Alabama 35243-5731
Telephone:    (205) 259-1725
tommy@tommyjameslaw.com

                                        /s/ Jeremy Knowles
                                        Jeremy Knowles (KNO016)
                                        Attorney for Plaintiff

**OF COUNSEL:**
**MORRIS HAYNES, Attorneys at Law**
3500 Colonnade Pkwy – Suite 100
Birmingham, Alabama 35243
Telephone:    (205) 324-4008
Facsimile:    (205) 324-0803
jknowles@mhhlaw.net

9

/s/ Walter E. McGowan
Walter E. McGowan (MCG016)
Attorney for Plaintiff

**OF COUNSEL:**
Gray, Langford, Sapp, McGowan,
Gray, Gray & Nathanson
P. O. Box 830239
Tuskegee, AL 36083-0239

## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL

Sequel TSI of Alabama, LLC d/b/a Sequel TSI of Tuskegee
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Sequel Youth & Family Services, LLC
c/o Corporation Service Company, Inc.
251 Little Falls Drive
Wilmington, DE 19808

Sequel TSI Holdings, LLC
c/o Corporation Service Company
641 South Lawrence Street
Montgomery, AL 36104

DOCUMENT 3

ELECTRONICALLY FILED
3/18/2022 11:36 AM
46-CV-2022-900020.00
CIRCUIT COURT OF
MACON COUNTY, ALABAMA
DAVID LOVE, JR., CLERK

## IN THE CIRCUIT COURT OF MACON COUNTY,

| | | |
|---|---|---|
| J. P., as Father and Next Friend of G. P., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: CV2022-_____ |
| SEQUEL TSI of ALABAMA, LLC, d/b/a SEQUEL TSI of TUSKEGEE; SEQUEL YOUTH & FAMILY SERVICES, LLC; SEQUEL TSI HOLDINGS, LLC; | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO *ALL* DEFENDANTS

COMES NOW the Plaintiff in the above-styled cause and requests that the Defendants answer the following interrogatories and requests for production of documents within the time required of the *Alabama Rules of Civil Procedure*. In addition, the Plaintiff requests that each Defendant attach a copy of each and every document referred to in any of the interrogatories or in Defendant's response thereto or that Defendant states the date and time that said documents will be produced for inspection and copying at the offices of Plaintiff's attorney.

**NOTE**: These interrogatories and requests for production of documents shall be deemed continuing so as to require supplemental answers or responses upon receipt of additional information by this Defendant or this Defendant's attorney subsequent to your original response. Any such supplemental answers or responses are to be filed and served upon counsel for Plaintiff within thirty (30) days from receipt of such additional information but not later than the first of the trial of this case.

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are to be used when answering these requests for production:

1.   The terms "you" and "yours," unless otherwise specified, mean and include SEQUEL TSI of ALABAMA, LLC d/b/a SEQUEL TSI of TUSKEGEE, SEQUEL YOUTH & FAMILY SERVICES, LLC, SEQUEL TSI HOLDINGS, LLC, its parent corporation, its subsidiaries, successors, predecessors, its present and former officers, executives, directors, agents and employees and all other persons acting or purporting to act on behalf of said Defendant. If you are a defendant in this action in a representative capacity (e.g., as agent or attorney-in-fact), the term

"you" and "yours" includes the person or entity you represent unless the context of the interrogatory indicates otherwise.

2. The term "document," whether used in the singular or plural, when used herein shall be interpreted in its broadest sense, and shall include any original, reproduction or copy of any kind of writing or documentary material, including, without limitation, correspondence, letters, memoranda, interoffice communications, e-mail, notes, records, reports, inspection reports, financial statements, financial records, contracts, microfilm, microfiche, video or audio recordings, memoranda of telephone or personal conversations or conferences, diaries, contracts, drawings, plans, specifications, fax communications, shipping records, bills of lading, minutes of meetings, invoices, billings, checks, reports, bulletins, brochures, charts, drafts, analyses, notices, pamphlets, lists, studies, articles, books, telegrams, computer discs, computer tapes and any other physical recordation of any and all writings or communications, and every other means of recording or preserving any tangible information, which employs the use of letters, words, pictures, symbols or any combination thereof, including, but not limited to, electronically stored information. The word "document(s)" shall include all documents in your actual or constructive possession, custody, or control that were prepared or made before, during or after the discovery period that relate to transactions, occurrences, or operations pertaining to the circumstances made the basis of this lawsuit.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). "Communication" includes, without limitation, proof of fax (if the communication was by fax), hard copies of e-mails or other computer generated transmissions of information or documents, and proof of mailing (if the communication was by mail).

4. "Electronically stored information" is defined here to be synonymous in meaning and equal in scope to the usage of this term in its broadest possible sense as set forth in the Alabama Rules of Civil Procedures, and shall mean and include all of the following: whether electronically mailed, stenographically recorded, transcribed, punched, videotaped, audiotaped, or otherwise recorded on film, microfilm, microfiche, computer disks or diskettes, computer memory, in electronic format or medium, however and by whomever produced, prepared, reproduced, made, or disseminated, of every type and description that is or has been in your possession, custody or control, or of which you have knowledge or that are known by you to exist, and that can be located or discovered by reasonably diligent efforts, including, but not limited to: correspondence, letters, e-mails, narratives, facsimiles, telecopy coversheets, telegrams, telexes, messages, records, reports, publications, bulletins, books, brochures, pamphlets, circulars, summaries or other records, notes of personal conversations, minutes or summaries or other records of telephone conversations or interviews, logs of telephone calls, message logs, summaries or other records of meetings and conferences, summaries or other records of negotiations, other summaries, minutes of meetings, diaries, diary entries, appointment books, calendars, time records, instructions, work assignments, visitor records, forecasts, statistical statements, financial statements, tax returns, schedules, and income-reporting forms, earnings statements, receipts, work sheets, work papers, graph, maps, plats, charts, drawings, tables, books of accounts, accounting records, schedules, ledgers, audits, loan files, contracts, agreements, security agreements, analytical records, corporate data sheets, consultants' reports, leases, deeds, conveyances, bills of sale, promissory notes, loan documents, pledges, collateral agreements, real estate closing binders, expert reports, witness statements, appraisals, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bills or records, bills, statements, records of obligations and expenditure, invoices, lists, journals,

advertisements or advertising copy, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sale orders, confirmations, records of bank deposits, checks, canceled checks, bank statements, letters of credit, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, articles, speeches, computer records and data (translated or converted, if necessary, by you through detection or conversion devices or programs into a reasonably usable form), computer programs, data compilations (including matter used in data processing), indices, drafts, working/discussion copies, revisions or amendments. Such documents include drafts and non-identical copies, whether different from the original because of any alterations, notes, comments, or other material contained thereon or attached thereto, as well as any documents, portions of which contain information responsive to any request herein. A draft or non-identical copy is separate information within the meaning of this term.

5. The words "record" or "recording", whether used in the singular or plural, shall be used herein in its broadest sense and shall include any original, reproduction, or copy of any kind of visual or audio information, including, without limitation, audio tapes, video tapes, compact discs, video discs, computer discs, computer tapes, motion picture film or any other means or mechanism for the preservation of visual or audio information.

6. The term "identify" or "identified" when used with reference to a document shall mean to provide so much of the following information about said document as is known to you or reasonably ascertainable by you:

> (a)   the date, author and recipient of such document;
> (b)   all addressee(s) and the address(es) to whom the document was sent (if any);
> (c)   the name of the present custodian of the document;
> (d)   the address of the present whereabouts of the document;
> (e)   a detailed summary of the subject matter of such document;
> (f)    a complete listing of any document or recording which was attached to, referred to or was the subject matter of said document;
> (g)   a statement as to whether such document has ever been produced or disclosed by you; and
> (h)   if you assert any privilege with respect to said document, a statement of the factual and legal basis for said assertion of privilege, with the same clarity and in the same detail that you would present such assertion of privilege to the court in defense of said privilege.

7. The term "identify" or "identified" when used with reference to a recording shall mean to provide so much of the following information about said recording as is known to you or reasonably ascertainable by you:

> (a)   the date of such recording;
> (b)   the photographer, camera person, tape operator or creator of such recording;
> (c)   the recipient of such recording;
> (d)   all addressee(s) and the address(es) to whom the recording was sent (if any);
> (e)   the name of the present custodian of the recording;
> (f)    the address of the present whereabouts of the recording;
> (g)   a detailed summary of the subject matter of the recording;

3

(h)   a complete listing of any document which was attached to, referred to or was the subject matter of said recording;

(i)   a statement as to whether such recording has ever been produced or disclosed by you; and

(j)   if you assert any privilege with respect to said recording, a statement of the factual and legal basis for said assertion of privilege, with the same clarity and in the same detail that you would present such assertion of privilege to the court in defense of said privilege.

8.   In any of the following interrogatories in which you are asked to "identify" a "person," the word "person" shall be understood to refer equally to natural persons, corporations, partnerships, limited liability companies, firms, joint ventures, association, or other entities. Further a request to "identify" a "person" shall be understood to include as well a request for the persons' full name, present address, telephone number, present or last known position and business affiliation, title, business telephone number, and, if employed or retained by you, each position he or she has held during the period in question, a general description of the duties of each such position, the specific period in which the position was held, and the office or location where the position was held.

9.   All interrogatories listed herein relating to verbal communications are intended. It is requested that the answers to each of these interrogatories set forth whether the verbal communication was by telephone or face to face or through some indirect means such as message, answering machine, or electronic mail. It is requested that each answer include the names, present business and residence addresses, telephone and fax numbers, business positions, and occupations of the parties involved in the communications, as well as of any other persons present during the communications.

10.   You are requested to furnish all information in your possession and all information available to you, not merely such information as is of your own personal knowledge but also all knowledge that is available to SEQUEL TSI of ALABAMA, LLC d/b/a SEQUEL TSI of TUSKEGEE, SEQUEL YOUTH & FAMILY SERVICES, LLC, SEQUEL TSI HOLDINGS, LLC, through its employees, officers, directors, and agents by reasonable inquiry, including inquiry of their representatives and attorneys.

11.   If you are unable to answer any of the following requests for production completely, you should answer to the extent possible and should state, in detail, the reason that your answer is incomplete or the reason that you are unable to answer the question(s) or produce the requested documents or records.

12.   If you choose to respond to an Interrogatory by producing documents and electronically stored information, clearly indicate to which Interrogatory and subparagraph to which the documents are responsive. If you have already produced documents that are responsive to an Interrogatory, describe the documents and the Interrogatory and subparagraph to which they respond.

13.   If you at any time had possession or control of a document and/or electronically stored information responsive to these interrogatories, but such document and/or electronically stored information has been lost, destroyed, purged or is not presently in your possession or control, then:

4

(a) identify the document and/or electronically stored information; (b) state the date of its loss, destruction, purge or separation from your possession or control; (c) state the circumstances surrounding its loss, destruction, purge or separation from your possession or control; and (d) state its present or last known location, including the name, address and telephone number of each person believed to have possession of such document and/or electronically stored information.

14.     If you claim privilege as a ground for failing to answer any Interrogatory, respond to that part of each such Interrogatory that, in your view, does not contain allegedly privileged communications. For each Interrogatory, or portion thereof, for which you claim a privilege, describe the factual basis for your claim of privilege in sufficient detail to permit adjudication of the validity of that claim, including without limitation, the following: (a) a brief description of the type of document or communication; (b) the date of the document or communication; c) the name, title and job description of the transmitter of the document or communication; (d) the name, title and job description of the person to whom the document or communication was addressed; (e) the name, title and job description of each person who has received or had access to the document or communication; (f) a brief description of the subject matter of the document or communication; and (g) the nature of the privilege claimed.

## INTERROGATORIES

1.     State the name, address, title and employer of the person or persons who answered or assisted in answering these interrogatories and identify each document the person or persons reviewed and/or consulted in answering these interrogatories.

2.     State your name correctly and/or the correct way you should be designated as a party defendant in an action of law at the time of the occurrence made the basis of this suit and at the present time.

3.     State your general corporate history.

4.     State your relationship to each of the other named Defendants.

5.     State the name, address and employer of each person who has any relevant knowledge concerning the facts and incident made the basis of this lawsuit.

6.     State the name and address of each expert witness that you expect to call at the trial of this case, and with respect to each expert witness, state the following: (a) their educational background and experience, and the facts constituting the basis of their qualifications; (b) each subject matter about which they are expected to testify; (c) the substance of any facts, opinions, or conclusions

5

to which they are expected to testify; and (d) a summary of the grounds or basis of each opinion to which they are expected to testify.

7.      List each document or item of demonstrative evidence you may or will offer as evidence at the trial of this case.

8.      Identify all persons who provided any information to anyone who conducted any investigation or analysis concerning the occurrences made the basis of this lawsuit.

9.      Is there any other individual or legal entity, not named in this lawsuit, who may-in any way-have any responsibility for what is alleged in the Complaint? If so, identify the person by name and provide the name and address of their employer.

10.     Identify any written statement and/or taped statement from any person (including the Plaintiffs, their parents, and/or legal guardians) concerning the events mentioned in Plaintiffs' Complaint by stating the person from whom the statement was taken, the person to whom the statement was given, the date the statement was taken, and the name and address of the present custodian of the statement.

11.     State the names and address of all persons who have investigated the facts of this matter and/or have taken any photographs, video recordings, or audio recordings and/or have conducted any kind of surveillance of Plaintiffs since the occurrences giving rise to this lawsuit.

12.     Identify any insurance agreement(s) under which any insurance company may be liable to satisfy all or part of any judgment that may be entered in this action, or used to indemnify or reimburse you for payments made to satisfy the judgment, including liability coverage, personal injury coverage, umbrella coverage, and sexual assault coverage. Include in your answer the name of the insurance company, the named insured under such policy, the policy years for each such policy, and the limits of any insurance coverage for each policy.

6

13.     Identify every allegation of abuse or neglect of residents of Sequel Tuskegee from January 1, 2015 through present, and of which you have knowledge, stating when you learned of the allegation, how you learned of the allegation, the parties involved, and the actions you took to investigate and address the allegation.

14.     Provide names, dates and details of each resident of Sequel Tuskegee who has been assaulted or who alleges to have been assaulted from January 1, 2015 through present.

15.     Provide the names of all employees at Sequel Tuskegee during the time G. P. resided there.

16.     Were there any employees of Sequel Tuskegee disciplined as a result of allegations in the Complaint? If so, please give the name, address, phone number, and position of each employee and what discipline was administered.

17.     State the correct corporate name of the facility described in Plaintiff's Complaint and located at 4280 U S Highway 29, Tuskegee, Alabama 36083.

18.     State the owner and operator of the facility known as Sequel Tuskegee.

### REQUESTS FOR PRODUCTION

1.     Every document upon which you relied on in answering interrogatories or reviewed by you in answering interrogatories or from which you received any information in answering interrogatories.

2.     G. P.'s Sequel Tuskegee record, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, including but not limited to, all nursing department progress log notes, staff observation progress notes, incident reports, initial psychiatric assessment, master treatment plan, psychosocial assessment/intake evaluation/integrated clinical assessment, comprehensive family assessment, individual treatment plan, individualized service plan, group counseling progress notes, individual counseling progress notes, weekly progress notes, observation reports, and consultation forms;

7

3.    All Sequel Tuskegee Incident Reports concerning G. P., including but not limited to, supplemental reports such as nursing assessments, debriefing sessions held with G. P. and staff involved, and notifications to external agencies and parents;

4.    Produce a copy of any and all records related to G. P. whether stored electronically or in paper format, whether part of "his file" or not.

5.    Any documentation from Sequel TSI Alabama, LLC, Sequel Holdings, LLC or Sequel Youth and Family Services which mandate, dictate, suggest or instruct:

      a.    Document retention policies for records stored physically on site or off site;
      b.    Manner of handling ESI and retention policies for same;
      c.    Any special handling or storage of videos or surveillance that shows altercations, fights, assaults, batteries, restraints, attacks abuse or neglect on any resident by any person while residing at your facility;
      d.    Any reporting requirements when there has been a report, observation or notification of an altercation, fight, assault, battery, restraint, attack, abuse or neglect on any resident by any person while residing at your facility
      e.    The number and locations of video surveillance and the reason for their presence
      f.    Any maintenance or repair logs for the video surveillance cameras (specifically which are not in operation and how long does it take to get them repaired. They often tell us that some of the cameras don't work and it seems like it takes them a long time to get them fixed. In the mean time staff and residents know which ones don't work and where they can go to be "off camera").
      g.    Protocols for reporting to government entities: what has to be reported and when. Reporting to parents or guardians.

6.    All documents provided to DYS, ADAP, DHR or any other government agencies related to their investigations into Sequel facilities in Alabama from January 1, 2015 to present.

7.    All documents received by Sequel from DYS, DHR, ADPH, DMH, Medicaid or any other government agencies related to alleged abuse and neglect of residents of Sequel Tuskegee from January 1, 2015 to present.

8.    All documents provided to DYS, DHR, ADPH, DMH, Medicaid or any other government agencies related to alleged abuse and neglect of residents of Sequel Tuskegee from January 1, 2015 through present.

9.    All correspondence, including emails, between Sequel employees and employees of DYS,

ADPH, DHR, Medicaid or DMH, related to allegations of abuse or neglect of residents of Sequel

Tuskegee from January 1, 2015 through present.

10.    All correspondence, including emails, between Sequel employees and employees of law

enforcement related to allegations of abuse or neglect of residents of Sequel Tuskegee from

January 1, 2015 through present.

11.    All DHR, DMH, Medicaid and DYS Certification reports, by whatever name, for Sequel

Tuskegee from January 1, 2015 through present.

12.    Any corrective action plans, by whatever name, provided to DYS, DHR, DMH, APH,

Medicaid or any other governmental agency as a result of any violations or deficiencies from

January 1, 2015 through present.

13.    All serious occurrence reports, critical incident reports, child abuse response forms, DYS

Youth Grievance forms by whatever name, provided to DYS, DHR, DMH, ALPH, Medicaid or

any other government agency from January 1, 2015 through present. This is to include any

attachments such as photographs, audio or video.

14.    All reports made by Sequel employees or others as required by *Code of Alabama* § 26-14-

3 from January 1, 2015 to present.

15.    Tax returns for each entity that is a party as well as all K-1s filed to any member of the

LLC from January 1, 2015 through present.

16.    List of all staff/employees who were employed at Tuskegee facility during G. P.'s

residency along with the following:

   a.    Last known name, address and phone number;
   b.    Training received
   c.    Job titles and descriptions
   d.    Their hours of work and assignment during the times that G. P. was injured
   e.    Whether they reported the injuries suffered by G. P. to any authorities
         within the Sequel corporate structure, local law enforcement, DYS and/or

9

> DHR. If so, when, to whom and the substance of the reporting. If not, an
> explanation as to why not.

17.    All annual and financial reports from January 1, 2015 through present.

18.    All contracts with any Alabama government agencies from January 1, 2015 through present.

19.    Recordings and transcripts of all calls made to the company hotline from January 1, 2015 through present.

20.    All documents related to Sequel sponsoring or participating at conferences for probation officers, judges, social workers, school safety professionals, attorneys and/or others involved in the child welfare system from January 1, 2015 through present.

21.    All correspondence, including emails, from or to DHR from January 1, 2015 to present.

22.    All documents concerning any injuries received by G. P. while at Sequel Tuskegee.

23.    Produce all Sequel Tuskegee policy and procedure manuals, by whatever name.

24.    Produce all Sequel Tuskegee employee manuals, by whatever name. This is to include all training materials, videos, etc.

25.    Produce any and all documents of any kind generated by any investigations concerning the occurrences made the basis of this lawsuit.

26.    Produce all photographs, films, moving pictures or videotapes of G. P. or any of the same that relate in any way to G. P.

27.    Produce a copy of each document reflecting charges for service rendered to G. P.

28.    Every insurance policy in its entirety identified in answers to interrogatories.

29.    Every correspondence received from an insurance company related to an insurance policy identified in answers to interrogatories related to insurance coverage provided to you or your company for claims made in this case.

10

30.     To the extent not previously produced, all documents obtained by you pursuant to any subpoenas.

31.     All emails, notes or other written communication related to G. P.

32.     All memorandums, reports, notes or other documents related to allegations of abuse and neglect against any Sequel Tuskegee employees from January 1, 2015 through present.

33.     All documents referencing or related to Sequel Tuskegee's average length of stay for residents and heads in beds ratios during G. P.'s time there.

34.     All documents in any way related to medical services and/or psychiatric services provided to G. P. These documents shall include, but are not limited to, any documents obtained by you pursuant to subpoenas.

35.     Any and all documents maintained in the ordinary course of business either as a requirement of licensure, for internal usage or as utilized for filing documents with any state or government agency or otherwise, relating to the occurrences identified in the complaint. These documents would include, but are not limited to, incident reports to state agencies, local government, law enforcement, internal incident reports, etc.

36.     All blueprints, drawings, diagrams and visual depictions of Sequel Tuskegee.

37.     All surveillance video footage throughout Sequel Tuskegee during G. P.'s time there.

38.     All Sequel and Sequel Tuskegee marketing materials from January 1, 2015 to present (including brochures, pamphlets, emails, video, photographs and mailers).

39.     All training materials related to training newly hired staff members.

40.     All emails or other communication regarding Sequel Tuskegee's revenue, revenue goals, profit, profit goals, financial losses, revenue strategies and profit strategies from January 1, 2015 to present.

11

41.   All documents, reports, memorandums, correspondence, emails, photographs, videotapes and/or electronic recordings in your possession, custody and/or control which relate to any of the facts and allegations contained in the complaint.

42.   Produce all disciplinary and/or termination letters, memos, emails, etc. for Sequel Tuskegee's employees who were disciplined or terminated based on allegations of abuse or neglect from January 1, 2015 to present.

43.   Produce any and all documents received from law enforcement related to allegations of abuse and neglect from January 1, 2015 through present.

44.   Produce all work scheduled for the staff at Sequel Tuskegee for the time G. P. was there.

45.   Any and all letters, statements, press releases, etc. provided to local and national media from January 1, 2015 through present.

46.   Corrective action plan, disciplinary, re-training, or policy changes enacted as a result of the incidents which are a subject of this lawsuit.

47.   Sequel Tuskegee's Student Handbook.

48.   Sequel Tuskegee's Grievance Policy and Grievance Form.

49.   Sequel Tuskegee's Internal Investigation Policy.

50.   Sequel Tuskegee's Restraint Policy and Restraint Documentation Forms.

51.   Copy of Sequel Tuskegee's current Certification/s and Site Visit Report/s including the Certification and Site Visit Report/s of DHR, DMH, and Joint Commission from January 1, 2015 to present.

52.   Copy of all Behavior Management programs employed by Sequel Tuskegee and/or in the process of being implemented by Sequel Tuskegee, including but not limited to SAMA, Ukero, and the Sanctuary Model from January 1, 2015 to present.

12

53.     Documentation of all training, including staff sign-in sheets, regarding behavior management, restraint and seclusion, and de-escalation techniques, provided to staff employed by Sequel Tuskegee during G. P.'s residency.

54.     All communications, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, that pertain and are related to, in any way, G. P. and Sequel Tuskegee.

55.     All CA/N notifications concerning and/or in any way related to G. P.

56.     All CA/N Investigation Reports completed by Macon County and/or State DHR from Sequel Courtland from January 1, 2015 through present.

Pursuant go Ala. R. Civ. P. 26(b)(5), if you have declined or failed to produce any requested documents, in whole or in part, under a claim of privilege or immunity from production, please produce a privilege log.

/s/ Thomas E. James
Thomas E. James (JAM023)
Attorney for Plaintiff

OF COUNSEL:
TOMMY JAMES LAW
4220 Cahaba Heights Court – Suite 210
Birmingham, Alabama 35243-5731
Telephone:   (205) 259-1725
tommy@tommyjameslaw.com

13

/s/ Jeremy Knowles
Jeremy Knowles (KNO016)
Attorney for Plaintiff

**OF COUNSEL:**
**MORRIS HAYNES, Attorneys at Law**
3500 Colonnade Pkwy – Suite 100
Birmingham, Alabama 35243
Telephone:    (205) 324-4008
Facsimile:    (205) 324-0803
jknowles@mhhlaw.net

/s/ Walter E. McGowan
Walter E. McGowan (MCG000)
Attorney for Plaintiff

**OF COUNSEL:**
Gray, Langford, Sapp, McGowan,
Gray, Gray & Nathanson
P. O. Box 830239
Tuskegee, AL 36083-0239

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL**
Sequel TSI of Alabama, LLC d/b/a Sequel TSI of Courtland
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Sequel Youth & Family Services, LLC
c/o Corporation Service Company, Inc.
251 Little Falls Drive
Wilmington, DE 19808

Sequel TSI Holdings, LLC
c/o Corporation Service Company
641 South Lawrence Street
Montgomery, AL 36104

14

CERTIFIED MAIL



David R. Love, Jr.
Macon Coun. Sheriff Dept.
P.O. BOX 830712
Tuskegee AL 36083

7019 2280 0000 2799 6763

SEQUEL TSI OF AL, LLC D/B/A SEQUEL TSI OF TUSKEGEE
C/O CORP SERV COMP, INC.
641 S. LAWRENCE ST
MONTGOMERY, AL 36104

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee

$ _CV 2022-900020_

Extra Services & Fees (check box, add fee as appropriate)

☐ Return Receipt (hardcopy)         $ _____
☐ Return Receipt (electronic)       $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required          $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage

$

Total Postage and Fees

$ _SEQUEL TSI Holdings, LLC_

Sent To
_C/O CORP SERV COMPL INC._

Street and Apt. No., or PO Box No.
_641 S. Lawrence St_

City, State, ZIP+4®
_Montgomery, AL 36104_

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7019 2280 0000 2799 6787

# Certified Mail service provides the following benefits:

- A receipt (this portion of the Certified Mail label).
- A unique identifier for your mailpiece.
- Electronic verification of delivery or attempted delivery.
- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

*Important Reminders:*

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
- Certified Mail service is *not* available for international mail.
- Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy *return receipt*, complete PS Form 3811, *Domestic Return Receipt*; attach PS Form 3811 to your mailpiece;

for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.

  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).

- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form **3800**, April 2015 *(Reverse)* PSN 7530-02-000-9047

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com.

## OFFICIAL USE

Certified Mail Fee

CV-2022-900020

$

**Extra Services & Fees** *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$ *SEQUEL TSI OF AL, LLC*

Total Postage and Fees
$ *D/B/A SEQUEL TSI of Tuskegee*

Sent To *C/O CORP SERV COMP, INC*

Street and Apt No., or PO Box No. *64 S. Lawrence St*

City, State, ZIP+4® *Montgomery, AL 36104*

9414 6794 2799 0000 0822 0827

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

# Certified Mail service provides the following benefits:

- A receipt (this portion of the Certified Mail label).
- A unique identifier for your mailpiece.
- Electronic verification of delivery or attempted delivery.
- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

## Important Reminders:

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
- Certified Mail service is *not* available for international mail.
- Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt*; attach PS Form 3811 to your mailpiece;

for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.

  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).

- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form **3800**, April 2015 *(Reverse)* PSN 7530-02-000-9047

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com* .

# OFFICIAL USE

Certified Mail Fee

$

*CV. 2022-900020*

Extra Services & Fees *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy)  $ _____

☐ Return Receipt (electronic)  $ _____

☐ Certified Mail Restricted Delivery  $ _____

☐ Adult Signature Required  $ _____

☐ Adult Signature Restricted Delivery  $ _____

Postmark
Here

Postage

$

Total Postage and Fees

*SEQUEL Youth & Family Services, LLC*

*C/O CORP SER COMP. INC.*

*257 Little Falls Dr.*

*Wilmington, DE 19808*

7014 2280 0000 2799 6770

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

# Certified Mail service provides the following benefits:

- A receipt (this portion of the Certified Mail label).

- A unique identifier for your mailpiece.

- Electronic verification of delivery or attempted delivery.

- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

## Important Reminders:

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.

- Certified Mail service is *not* available for International mail.

- Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.

- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:

  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt*; attach PS Form 3811 to your mailpiece;

for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.

  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.

  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).

  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).

- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form **3800**, April 2015 *(Reverse)* PSN 7530-02-000-9047

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Kelly Webster*  ☑ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery
3-21-22

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

SEQUEL TSI OF AL, LLC D/B/A SEQUEL TSI OF TUSKEGEE

C/O CORP SERV COMP, INC.

641 S. LAWRENCE ST

MONTGOMERY, AL 36104

9590 9402 6723 1060 1187 08

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7019 2280 0000 2799 6763

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt



**USPS TRACKING #**

9590 9402 6723 1060 1187 08

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box®

David R. Love, Jr.

Macon County Circuit Clerk

P.O. Box 830723

Tuskegee, AL 36083

CV-2022-900020    Summons

8-072323

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x *Kelly Webster*
☒ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

3-31-22

1. Article Addressed to:

SEQUEL TSI HOLDINGS, LLC
C/O CORP SERV COMP, INC.
641 S. LAWRENCE ST
MONTGOMERY, AL 36104

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

9590 9402 6723 1060 1186 85

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7019 2280 0000 2799 6787

PS Form 3811, July 2020 PSN 7530-02-000-9053         Domestic Return Receipt



USPS TRACKING #

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 6723 1060 1186 85

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

David R. Love, Jr.

Macon County Circuit Clerk

P.O. Box 830723

Tuskegee, AL 36083

CV-2022-900020                    Summons

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SEQUEL YOUTH & FAMILY SERVICES, LLC

C/O CORP SER COMP, INC.

251 LITTLE FALLS DR

WILMINGTON, DE 19808

A. Signature

X  Ryan MacArthur          ☐ Agent
                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

Ryan MacArthur

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

HAMILTON BRANCH
MAR 25 2022
USPS 19808

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery



9590 9402 6723 1060 1186 92

2. Article Number (Transfer from service label)

7019 2280 0000 2799 6770

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt





USPS TRACKING #

9590 9402 6723 1060 1186 92

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

* Sender: Please print your name, address, and ZIP+4® in this box®

David R. Love, Jr.

Macon County Circuit Clerk

P.O. Box 830723

Tuskegee, AL 36083

CV-2022-900020       Summons